KENNETH M. SNYDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Snyder v. Commissioner
Docket No. 11667-81.
United States Tax Court
T.C. Memo 1983-626; 1983 Tax Ct. Memo LEXIS 163; 47 T.C.M. (CCH) 12; T.C.M. (RIA) 83626; October 11, 1983. Kenneth M. Snyder, pro se. Ivan A. Gomez, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a $5,149.42 deficiency in petitioner's income tax, as well as a $257.47 addition to tax under section 6653(a), I.R.C. 1954, for 1977. The issues for decision are whether wages received by petitioner are income, whether petitioner is entitled to a charitable deduction for contributions to a *164 "church", and the correctness of the addition to tax. FINDINGS OF FACT At the time his petition was filed, petitioner resided in West Palm Beach, Florida. Petitioner's Federal income tax return for 1977 does not indicate the date on which it was received by the Internal Revenue Service or the service center with which it was filed, but petitioner testified that a Form 1040 was "submitted" to the "Director of the Internal Revenue Service at Austin, Texas" on or about "February 28th", presumably referring to 1978. During 1977, petitioner was employed primarily by Universal Maintenance and Construction Company in Houston, Texas, as a carpenter and field superintendent. Petitioner also performed services for Joint Ventures, Inc., another company in the Houston area. The wage and tax statements (Forms "W-2") which petitioner received from these companies for 1977 disclose "Wages, tips, and other compenstion" of $20,352.04 from Universal Maintenance and Construction Company and $30 from Joint Ventures, Inc. Petitioner received from the Basic Bible Church of America a "Certificate of Ordination" dated December 9, 1977, certifying that the "Rev. Kenneth M. Snyder D.D." was "ordained" *165 a "Minister" of that church.This "degree" was honorary, as petitioner was not required to complete any educational courses to receive it; in fact, it appears that the Basic Bible Church has neither a faculty nor a student body, and that it awards only honorary degress. Prior to his "ordination", petitioner met with Jerome Daly, the "archbishop" of the Basic Bible Church, and made a "donation" to Mr. Daly of approximately $750 "to help me establish my common law corporation because of my beliefs in the principles". On December 12, 1977, petitioner executed a "Vow of Poverty", in which he purported to make a gift to "The Order of Almighty God, A Religious Order, Chapter No 7920" of the Basic Bible Church, of all of his possessions and income. Nevertheless, at least during 1977 none of his funds were transferred to an account in the name of his "church", and all of his compensation checks were either cashed or deposited in a bank account on which he and his wife were authorized to draw. These funds were used to cover the entire range of petitioner's living expenses, including rent, utilities, automobile, clothing, and the support of petitioner's children. Petitioner's "church", *166 chapter 7920 of the Basic Bible Church, had neither a specific congregation nor regularly scheduled meetings. Petitioner did have some meetings in his home, but otherwise his functions as a minister appear to have been relatively minimal. Petitioner has apparently performed two marriage ceremonies, but these were in 1981 or 1982. On the 1977 Form 1040 "submitted" to the Internal Revenue Service by petitioner, the amount of $20,382.04 was shown as "Wages, salaries, tips, and other employee compensation". On schedule A of that return, a $20,382.04 deduction was claimed for contributions, with the explanation that "Entire salary of $20,382.04 was turned over to Basic Bible Church of America and its Religious Order, The Order of Almighty God". On July 14, 1978, the Austin, Texas, Service Center received from petitioner a Form 1040X, "Amended U.S. Individual Income Tax Return", as well as another 1977 Form 1040 with the word "AMENDED" typed at the top of page 1. On both of these latter forms, petitioner indicated that the $20,382.04 which he had previously reported as "Wages, salaries, tips, or other employee compensation" was "tax exempt", and that his income was $0. In the *167 statutory notice of deficiency, the Commissioner increased petitioner's 1977 income by $20,382.04, explaining that petitioner "received wages of $20,382.04 in 1977 which you stated on your tax return to be tax exempt and deducted as contributions. These amounts have been determined to be taxable income. The deductions as contribution is disallowed as these have not been verified as allowable deductions". This increase in petitioner's income resulted in a tax deficiency of $5,149.42. The Commissioner also determined that part of the underpayment of tax was due to negligence or intentional disregard of rules and regulations, and consequently a five percent addition to tax of $257.47 was "asserted". OPINION On his "amended" 1977 tax returns, petitioner made vague and unsubstantiated claims that his income was "tax exempt". Petitioner has offered no further justification for this position on brief, switching instead to a contention that he received no income in 1977 because the $20,382.04 was paid to him in exchange for his labor in which he had a basis equal to its fair market value. Thus, according to petitioner, there was no "gain" or "loss" on the exchange and consequently *168 no income. We reject the positions taken by petitioner in his "amended" returns and on brief. The $20,382.04 received by petitioner in 1977 was unquestionably compensation for his services, which must be included within his gross income under section 61(a)(1), I.R.C. 1954. [1] Moreover, petitioner's position that he had no "gain" or "loss" on the sale of his services and thus no income has been considered and rejected before. See Rowlee v. Commissioner,80 T.C. 1111, 1119-1120 (1983), and the cases cited therein. Finally, we find nothing in Part III of Subtitle A, Chapter 1, Subchapter B of the Code, entitled "Items Specifically Excluded from Gross Income", that would exclude or exempt petitioner's compensation from his gross income. We hold for the Government on this issue. In respect of the disallowance of petitioner's claimed $20,382.04 charitable contribution deduction, the Government must likewise prevail. Petitioner has conceded *169 on brief that the facts of this case are in substance indistinguishable from those in McGahen v. Commissioner,76 T.C. 468, 481-483 (1981), affd. by unpublished order     F. 2d     (3d Cir. Aug. 25, 1983), in which this Court held that deductions for "contributions" to another individual chapter of the Basic Bible Church of America would not be allowed. In any event, petitioner is not entitled to any such deductions because it is clear that he both received and consumed the amounts in question in his individual capacity, and no funds were ever segregated or applied for the purposes described in section 170(c), I.R.C. 1954, which defines charitable contributions. See Miedaner v. Commissioner, 81 T.C.     (September 7, 1983) (Slip Op. p. 16). Moreover, we have substantial doubts about the charitable nature of the entire course of activity in respect of petitioner's "church". These doubts are based upon the circumstances surrounding the formation of the "church", including petitioner's "ordination", his "vow of poverty", and in particular the $750 "donation" to Jerome Daly. Cf. Jenny v. Commissioner,45 T.C.M. 440, 442, P-H Memo T.C. Par. 83,001 (1983) *170 ("Daly sold petitioners this document and ordained Julius Jenny as a minister for $300".) The Commissioner's determination is sustained. Petitioner seeks to avoid the five percent addition to tax for an underpayment which is due to negligence or intentional disregard of rules and regulations by arguing that he has shown "cooperation and diligence" in the prosecution of his case. This argument misses the mark. Wholly apart from the manner in which the case was prosecuted, the position taken by petitioner on his tax return, which resulted in the underpayment of tax, was "at best wishful thinking and at least intentional disregard of the rules and regulations". Ocejo, Jr. v. Commissioner,45 T.C.M. 584, 587, P-H Memo T.C. Par. 83,048 (1983) (footnote omitted). See also Cornell v. Commissioner,T.C. Memo 1983-370; Murphy v. Commissioner,T.C. Memo 1983-59. The addition to tax is sustained. Decision will be entered for the respondent.
Footnotes
1. Cf. Benningfield, Jr. v. Commissioner,↩ 81 T.C.     (September 19, 1983) (Slip Op. p. 16), reiterating the long standing "assignment of income" doctrine which requires that income be taxed to the one who earns it.